IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EDWARD LOWER,

        Plaintiff,

v.                                         Civil Action No. 2:04-CV-57

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I.  Introduction

A.    Background

     Plaintiff, Edward Lower, (Claimant), filed his Complaint on August 13, 2004 seeking

Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner

of Social Security, (Commissioner).[1]  Commissioner filed her Answer on October 22, 2004.[2]

Claimant filed his Motion with Memorandum in Support of to Remand on November 24, 2004.[3]

Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on December

27, 2004.[4] Claimant filed his Motion for Summary Judgment and Brief in Support Thereof on

January 19, 2005.[5] Commissioner filed a Supplemental Memorandum responding to Claimant's

Motion on March 14, 2005.[6] Claimant filed a Reply in response to Commissioner's Supplemental

---

[1] Docket No. 1.
[2] Docket No. 6
[3] Docket No. 8.
[4] Docket Nos. 12 and 13.
[5] Docket No. 14

Memorandum on March 28, 2005.[7]

B.     The Pleadings

    1.     <u>Claimant's Motion with Memorandum in Support of to Remand.</u>

    2.     <u>Commissioner's Motion for Summary Judgment and Brief in Support Thereof.</u>

    3.     <u>Claimant's Motion for Summary Judgment and Brief in Support Thereof.</u>

    4.     <u>Commissioner's Supplemental Memorandum responding to Claimant's Motion.</u>

    5.     <u>Claimant's response to Commissioner's Supplemental Memorandum.</u>

C.     <u>Recommendation</u>

    1.     I recommend that Claimant's Motion for Summary Judgment be DENIED because the ALJ was substantially justified in his decision. Specifically the ALJ properly analyzed Claimant's credibility.  Also, the ALJ gave proper weight to the opinion of Claimant's treating physicians, Dr. Morgan and Dr. Beard.

    2.      I recommend that Commissioner's Motion for Summary Judgement be GRANTED for the same reasons set forth above.

## II.  Facts

A.     <u>Procedural History</u>

     On June 23, 1995 Claimant filed for Disability Insurance Benefits (DIB) and on May 5, 1995 he submitted a claim for Social Security Income (SSI) payments alleging disability since April 15, 1995.  The application was denied initially and on reconsideration.  A hearing was held on June 13, 2000  before an ALJ.  A supplemental hearing was held on July 18, 2002 before an ALJ after

the Claimant was paroled and obtained counsel. The ALJ's decision dated January 23, 2003 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on June 28, 2004. This action was filed and proceeded as set forth above.

B.    Personal History

Claimant was 46 years old on the date of the July 18, 2002 hearing before the ALJ. Claimant has an eight grade education and past relevant work experience as a sawmill worker, drilling rig worker, and truck driver.

C.    Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability April 15, 1995- January 23, 2003:

**West Virginia Disability Determination Service**
**Charles Paroda, D.O. 12/4/00 Tr. 112-116**
•     Impressions: Status post gunshot wound to the chest and abdomen.
•     Shortness of breath of unknown etiology.
•     Chronic and acute mid to lower back discomfort; bullet logged next to spinal cord.

**Eli Rubenstein, M.D. 12/12/00 Tr. 118**
•     Impressions: Normal chest; Normal lumbar spine.

**Tri-State Occupational Medicine, Inc.**
**12/4/00 Tr. 120**
•     Interpretation: Mild restrictive disease.

**Psychiatric Review Technique**
**Frank D. Roman 12/12/00 Tr. 123-136**
•     Impairment(s) severe but not expected to last 12 months.
•     Affective Disorders
•     Anxiety-Related Disorders.
•     "C" criteria: Evidence does not establish the presence of "C" criteria.
•     Mild restriction of activities of daily living.
•     Mild difficulties in maintaining social functioning.
•     Mild difficulties in maintaining concentration, persistence, or pace.

- No repeated episodes of decompensation, each of extended duration

**Physical Residual Functional Capacity Assessment**
**Hugh M. Brown, M.D. 12/21/00 Tr. 137-144**
- Exertional limitations: None established.
- Postural limitations: None established.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: None established.

**St. Joseph Hospital**
**12/30/00 Tr. 147**
- Diagnostic impression: Acute exerbation of chronic back pain and spasm
- Schizophrenia

**The Appalachian Community Health Center**
**C. France, M.D. 3/27/01 Tr. 152**
- Impression: PTSD - 309.81
- Major depression, recurrent, without psychotic features - 296.33

**The Appalachian Community Health Center**
**C. France, M.D. 1/23/01 Tr. 153**
- Impression: PTSD - 309.81
- Major depression, recurrent, without psychotic features - 296.33

**The Appalachian Community Health Center**
**Dilip Chandran, M.D. 11/1/00 Tr. 154**
- Impression: PTSD - 309.81
- Recurrent major depression, severe, without psychotic features - 296.33

**The Appalachian Community Health Center**
**Dilip Chandran, M.D. 9/25/00 Tr. 156-159**
- Diagnosis: Axis I: PTSD, Recurrent major depression, severe without psychotic features.
- Axis II: None.
- Axis III: Asthma, history of gunshot wound.
- Axis IV: Recent incarceration, victim of gunshot wound, unemployment, poor primary supports.
- Axis V: GAF 55

**The Appalachian Community Health Center**
**Sherry Fisher, BS 8/2/00 Tr. 160-162**
- Clinical Impression: Edward is in need of immediate inpatient psychiatric treatment. A referral was made at St. Joseph's Hospital Behavior Health Unit and client was accepted.
- Diagnostic Impression Provisional: Axis I: PTSD - 309.81, Major depressive disorder,

severe without psychotic features - 296.23
- Axis II: No Diagnosis - V 71.09
- Axis III: Z03.2
- Axis IV: 8 - Legal
- Axis V: GAF - 40

**Psychiatric Review Technique**
**James Capage, Ph.D. 6/6/01 Tr. 163-176**
- Medical Disposition: Insufficient Evidence.

**7/6/01 Tr. 179-182**
- Diagnostic impression: Axis I: Post-traumatic stress disorder, major depression, recurrent, moderate without psychotic feature, history of drug abuse.
- Axis II: Deferred.
- Axis III: Complications related to previous gunshot wound.

**Physical Residual Functional Capacity Assessment**
**James Capage, Ph.D. 7/31/00 Tr. 183-186**
- "A": Moderately limited in his ability to understand and remember detailed instructions. No evidence of limitation in other categories.
- "B": Moderately limited in ability to carry out detailed instructions, maintaining attention and concentration for extended periods. Moderately limited in ability to complete normal workday without interruptions from psychologically based symptoms.
- No evidence of limitation in carrying out short, simple instructions or making short work-related decisions.
- All other categories are not significantly limited.
- "C": Moderately limited in accepting instructions and responding appropriately to supervisor criticism.
- No evidence of limitation exists in his ability to ask simple questions and request assistance.
- All other categories are not significantly limited.
- "D": All categories not significantly limited.

**Psychiatric Review Technique**
**James Capage, Ph.D. 7/31/01 Tr. 187-200**
- RFC Assessment Necessary
- Affective Disorders
- Anxiety-Related Disorders
- "C" criteria: Evidence does not establish the presence of "C" criteria.
- Mild restriction of activities of daily living.
- Moderate difficulties in maintaining social functioning.
- Moderate difficulties in maintaining concentration, persistence, or pace.
- One or two repeated episodes of decompensation, each of extended duration.

**West Virginia Disability Determination Service**
**Kip Beard, M.D. 5/30/02 Tr. 201-206**
- Impression: Gunshot wound to the left chest.
- Records indicate bullet fragments lodged in the region of T9-T11.
- CT of the thoracic region reveals a left T10 transverse process fracture associated with bullet fragments.
- Status post exploratory laparotomy for repair of left diaphragmatic tear and left liver lobe laceration tear.
- History of left hemopneumothorax, status post thoracotomy.
- Residual left lateral friction rub.
- Possible mild incisional hernia.
- Chronic neck and back pain.
- Chronic cervical strain superimposed upon cervical spondylosis.
- Chronic thoracic strain (question reaction to foreign body in the left T10 transverse process fracture).
- Chronic lumbosacral strain superimposed upon some mild degenerative joint and disc disease.
- History of bilateral carpal tunnel syndrome, status post left carpal tunnel release.
- Shortness of breath, asthma, according to the claimant.
- History of tobacco abuse.
- History suggestive of chronic bronchitis.

**Medical Source Statement of Ability to do Work-Related Activities**
**5/30/01 Tr. 207-210**
- Exertional limitations: occasionally 20-30 lbs., frequently 20 lbs., standing and/or walking 6 of 8 hours, sitting 6 of 8 hours, pushing and pulling limited in upper extremities.
- Postural limitations: All frequently.
- Manipulative limitations: Limited reaching in all directions (including overhead), reaching occasionally. All other categories unlimited.
- Visual/Communicative limitations: All unlimited.
- Environmental limitations: Limitations on temperature extremes, vibrations, humidity/wetness and hazards (machinery, heights...). All other categories unlimited.

**Correctional Medical Service**
**R. Grasty Rn. 10/18/94 Tr. 252**
- Assessment: Puffy finger tips around the nail lines, cracking around the base of the nail - face has no redness or cracks.

**6/21/99 Tr. 253**
- Assessment: AAO Ambulatory in acute distress.

**Correctional Medical Services**
**12-7-98 Tr. 258**

- Assessment: No evidence of increased blood pressure

**St. Joseph's Hospital**
**7/3/01 Tr. 369**
- Diagnostic Impression: Chest pain - atypical. Anxiety.

**St. Joseph's Hospital**
**Donald M. Wald, M.D. 7/3/01 Tr. 376**
- Impression: No acute process.

**West Virginia Department of Health and Human Resources**
**Amy Pearson, M.D. 8/2/01 Tr. 379-380**
- Diagnosis: Major: Back Pain, gunshot wound, PTSD, Depression, Anxiety
- Minor: HTN

**Amy Pearson, M.D. 8/7/01 Tr. 383**
- Assessment: Elevated blood pressure. Will start him on hydrochlorothiazide at 25 mg q.d.
- Chronic back pain. I have no old records and have recommended a work up. He will let me know what he wants us to proceed with.

**Amy Pearson, M.D. 7/15/01 Tr. 390-391**
- Assessment: Chronic back pain.

**Medical Source Statement of Ability to do Work-Related Activities (Mental)**
**Morgan D. Morgan, M.A. 7/9/02 Tr. 417-418**
- Moderate restriction on ability to understand and remember detailed instructions and carry out detailed instructions.
- Slight restriction on ability to make judgements on simple work-related decisions.
- "2" All restrictions are Marked.

**West Virginia University Hospitals, Inc.**
**Jeffrey Hogg, M.D. 4-19-95 Tr. 492-493**
- Impression: Extensive thoracic aortography performed in 3 radiographic projections reveal no extravasation, psudoaneurysm, transections, or laceration, or intimal irregularity in the thoracic aorta. No abnormality of vessels arising from thoracic aorta can be identified.
- Tubes and lines are present as detailed above.
- A metallic structure which by history represents a bullet is observed over the left T11 pedicle in the AP projection and along the right lateral coritcal shadow in the right anterior oblique projection of the shadow indicates that the bullet fragment is not located posteriorly.

**West Virginia University Hospitals, Inc.**
**Michael Cunningham, M.D. 4/16/95 Tr. 521-522**

- Impression: Limited cervical spine study. Osteophytes noted within the ventral end-plates of C4-C5, C6 and C7 ventral end-plates of the vertebral bodies. The osteophytes are cervical spine series within the department is recommended, as clinically indicated.

**West Virginia University Hospitals, Inc.**
**Harmindar Gill, M.D. 4/18/95 Tr. 534**
- Impression: Air space disease within the left lung base suggestive of a contusion from patient's history of gunshot wound. A pneumonic process cannot be excluded and clinical correlation is advised. There is no evidence of pneumothorax.

**The Appalachian Community Health Center**
**Wiley Dickerson M.D. 7/25/95 Tr. 537**
- Impression: Agoraphobia with mild panic disorder.
- Some generalized anxiety.
- Post-Traumatic stress disorder.
- Need to rule out major depressive disorder.

**The Appalachian Community Health Center**
**Wiley Dickerson, M.D. 6/23/95 Tr. 538-541**
- Impression: Patient has developed significant anxiety, dysphoria in light of recent traumatic event of shooting.
- Has some features of post traumatic stress disorder, but not a full disorder.
- Adjustment disorder with anxious and depressed mood rather than generalized anxiety disorder and mild major depressive disorder.
- Need to rule out full pain disorder.
- Begin Valium at 10 mgs.

**The Appalachian Community Health Center**
**Tanya Zickerfoose, M.S. 1/30/96 Tr. 542-544**
- Clinical Impression: Patient reports that his primary problems are psychological. He appears to display fair insight and intelligence.
- Diagnostic Impression:
- Axis I: Post traumatic stress disorder.
- Axis II: Deferred.
- Axis III: Two gunshot wounds in the chest.
- Axis IV: Unable to work because of his injuries.
- Axis V: Current.

**West Virginia Disability Determination Service**
**Charles M. Paroda, D.O., Ph.D. 9/5/95 Tr. 545-549**
- Impressions: Status post gunshot wound to the chest. (#1)
- Depress anxiety, secondary to #1.
- Asthma, by history.

**P.S. Khatter, M.D. 8/30/95 Tr. 550**
- Impression: Prior bullet injury.

**Psychiatric Review Technique**
**9/8/95 Tr. 551-560**
- Impairment(s) not severe.
- Affective Disorders.
- Anxiety Related Disorders.
- Depression secondary to gunshot.
- Anxiety secondary to gunshot.
- No substance addiction disorders.
- No restrictions of activities of daily living.
- Slight difficulties in maintaining social functioning.
- Seldom deficiencies of concentration, persistence or pace resulting from failure to complete tasks in a timely manner.

**Residual Physical Functional Capacity**
**Hugh M. Brown, M.D. 9/11/95 Tr. 560-567**
- Exertional limitations: None established.
- Postural limitations: None established.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: None established.

**West Virginia University Hospitals, Inc.**
**Sarah Avery, M.D. / Orlando Ortiz, M.D. 7/3/95 Tr. 579-580**
- Impression: Status post gunshot wound with bullet fragment identified in left paraspinal soft tissue at the level of T9 and 10, bullet fragments identified at left side of T10, with fragments extending into left pleural space.
- No evidence for intradural or extradural contrast enhancement, and no evidence for epidural or paraspinous fluid collection.

**West Virginia University Hospitals, Inc.**
**Terry Shank 6/16/95 Tr. 581**
- Impression: No acute change is identified within the chest.
- Persistent pleural thickening and/or effusion within the posterior aspect of the left hemithorax unchanged since previous study.

**Psychiatric Review Technique**
**2/8/96 Tr. 583-591**
- RFC Assessment Necessary
- Anxiety Related Disorders
- PTSD, general anxiety disorder.

- No substance addiction disorder.
- Moderate Restriction of activities of daily living.
- Moderate difficulties in maintaining social functioning.
- Often deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner.

**Mental Residual Functional Capacity Assessment**
**2/8/96 Tr. 592-594**
- Not significantly limited in carrying out simple, short instructions and when sustaining an ordinary routine without special supervision.
- No significant limitations to understanding and memory
- Moderately limited in maintaining attention and concentration for extended periods
- Moderately limited to performing activities within a schedule, maintaining regular attendance and being punctual.
- Ability to work in coordination with or proximity to others without being distracted by them is moderately limited.
- Ability to accept instructions and respond appropriately is moderately limited.
- Ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes is moderately limited.
- Adaptation is not significantly limited.

**Residual Physical Functional Capacity**
**2/9/96 Tr. 595-602**
- Exertional limitations: None established.
- Postural limitations: None established.
- Manipulative limitations: None established.
- Visual limitations: None established.
- Communicative limitations: None established.
- Environmental limitations: None established.

D.    <u>Testimonial Evidence</u>

<u>1. Claimant</u>

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 633-38, 641, 649):

Q    Okay.  I want to ask you, do you suffer from back pain?

A    Yes, sir.

Q    Can you describe that pain to me?

A       It's a real sharp, burning pain that's there almost all - - it's there all the time.  And then when I - - if I try to do anything or I do [] anything, it gets worse and it'll lay me up for a couple, three days at a time.

Q       Do you try to avoid doing activities?

A       Yes, sir, I do.

Q       Have you learned over the years now what you can and cannot do?

A       Yes, sir.

Q       Okay.  Now, how much do you feel that you could lift on a repetitive basis?

A       I don't think I could lift five or ten pounds, you know, regular.

Q       Okay.  Now, does your back cause you problems with walking or standing?

A       Yes, sir.  It hurts to stand long periods of time and if I do any walking, it puts the burning clear up to my head, down into my hips, and my right knee mostly.

Q       Do you do much walking on a normal basis?

A       I don't do no walking.  It's - - between the pain and then I run out of breath.  I can't walk very far at all.

Q       Okay.  Now, let me ask you about your breathing.  Can you just tell me about that problem?

A       I just consider it as like just being real short-winded because I don't smoke or nothing like that or any kind of tobacco products whatsoever.

Q       Have you ever smoked?

A       Yeah, back when I was a teenager, you know, but that was like, 20, 30 years ago.

*               *               *

Q        Okay.  Now, we kind of got off track there for a minute.  I want to ask you about your breathing again.  What types of things make you short of breath?

A        I get short of breath just bend over and needing to tie my shoes, any kind of position of bending, walking, about anything I do.  I just - - I can't breathe very much.  I get short-winded even trying to talk.

Q        Okay.  Now, do you feel that your psychological symptoms sometimes affect your breathing?

A        Yes, I do.  I just told - - that's probably kind of - - like the anxiety thing is probably just making me breathe worse than what I should be breathing, but I don't know if that's what it is.  But that's what I've been told.

Q        So you think it's a combination of problems?

A        Yes, sir.

Q        It's physical and psychological?

A        Yes, sir.

                          *                *                *

Q        Okay.  What type of symptoms do you have from post-traumatic stress disorder?

A        Well, I can't never get anything done.  I just don't go nowhere.  I can't be going out with people around anybody.  I get all nervous, shook up, scared.  I'm real down all the time.  I don't have no energy to do anything.  I don't have no will to do anything.  I just can't be around people or do anything that I know of.

                          *                *                *

Q        When you have - - when you feel this nervousness, does - - do you have that

feeling inside, as well?  I mean does your stomach bother you?

A       My stomach gets all shaky and like knotted up or something.  I don't know.

Q       Okay.  Does your heartbeat increase?

A       I don't know if it does or not.  That's - -

Q       Okay.  And you say you have a hard time swallowing when that happens?

A       Yes, sir.

Q       How do you feel you would deal with employees around you?

A       I don't think I could deal with anybody being around me, no matter who it is.

*               *               *

ALJ       Well, do you have a neck problem, sir?

CLMT       Yes, sir.

ALJ       And what sort of problems are they?

CLMT       I can't even lean my head to the right no further than what it is right now, you know.  It's - - it just feels like - - I don't know - - it's real tight and real pulled all the time.

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 652-54):

Q       All right.  Then let me ask you to assume a hypothetical individual of the Claimant's age, educational background, and work history.  Assume that the person would be able to perform light work with a sit/stand option, would be able to perform all postural movements occasionally, except could not climb ladders, ropes, or scaffolds.  Assume for the moment that the person would have limitation of motion in the cervical area such that they

13

should not be required to do repetitive neck movements, including rotation, flexion, and extension.  And also no repetitive reaching straight-ahead or overhead.  In other words, I'm essentially talking about work that can be done in front of a person.

A        Excuse me.  I'm not sure what you mean.  No repetitive reaching in front - -

Q        Out like this.

A        No reaching at all?

Q        No.  Repetitive.

A        Okay.

Q        Or overhead, as well.  And no exposure to environmental pollutants or temperature extremes.  Should work in a low stress environment and would be limited to work involving simple, one to two-step instructions and tasks.  And should have no more than occasional interaction with other persons.  Would there be any work in the regional or national economy that such a person could perform?

A        There would be jobs, Your Honor, that the person would basically be stationary at a workstation, which would not require a lot of neck movement.  It would deal with things and not people and it would be in a pollution-free environment such - - I'm just a little confused on the reaching.  When you say - - there are jobs such as assemblers, sorters, packers, inspectors - -

Q        Where you have your hands in front of you like that?

A        You can work right in front of you, you're not - -

Q        Right.

A        - - extending.

Q        Right.

A        Then I would offer the following jobs, Your Honor.  There are inspector/checkers of small products, 800 local, 111,000 nation.  There are sorters and graders, 200 local, 49,000 nation.  There are assemblers of small products, 1500 local, 463,000 nation.  And there are laundry folders, 300 local, 48,000 nation.  These would be some examples of light work with a sit/stand option and the other aspects of the hypothetical.

Q        All right.  Then if you would reduce the exertional level to sedentary and retain the other limitations?

A        Yes, Your Honor.  Similar jobs at the sedentary level would be inspector/checkers of small products, 150 local, 37,000 nation.  Assemblers, 650 local, 149,000 nation.  Sorters and graders, 100 local, 20,000 nation.  And surveillance system monitors, 50 local, 15,000 nation.

Q        Do any of the jobs you named have any push/pull requirements of the upper extremities?

A        Minimal, Your Honor.   You're just dealing with your arms on the table in front of you and using your hands.

Q        And is there anything in your testimony that is inconsistent with anything in the DOT?

A        The DOT does not mention a sit/stand option.  The reason I offered these jobs in response to your hypothetical is based on the 22 years experience I've had in placing disabled individuals.  These types of jobs typically permit the person to sit or stand while doing essential duties.

*               *               *

E.        Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

- Goes shopping. (Tr. 181,415).

- Eats out at restaurants. (Tr. 415).

- Attends motorcycle rallies. (Tr. 405).

- Able to lift five or ten pounds (Tr. 634).

- Goes places with his brother. (Tr. 642).

- Drives. (Tr. 642).

- Reads books. (Tr. 673).

## II. The Motions for Summary Judgment

A.    Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred by failing to perform a proper credibility analysis. Also, Claimant contends that the ALJ failed to properly weigh and evaluate the opinions of Claimant's treating physicians.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ performed a proper credibility analysis. Also, Commissioner asserts that the ALJ properly weighed and evaluated the medical opinions of record.

B.    The Standards.

1.    Summary Judgment.    Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2.      Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3.      Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4.      Social Security - Medically Determinable Impairment. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.      Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

6.      <u>Social Security - Standard of Review</u>.  It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence.  The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary.  <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.      <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>.  The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry."  <u>Milburn Colliery Co. v. Hicks</u>, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence.  <u>Gordon v. Schweiker</u>, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.      <u>Social Security - Substantial Evidence - Defined</u>.  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.      <u>Social Security - Sequential Analysis</u>.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have listed impairments but cannot perform her past

work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10.     Social Security - Treating Physician - Controlling Weight - The opinion of a treating physician will be given controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record.  20 C.F.R. § 416.927(d)(2).  See also  Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984); Heckler v. Campbell, 461 U.S. 458, 461 (1983); Throckmorton v.  U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir.  1990).

11.     Social Security - Residual Functional Capacity.  A Residual Functional Capacity is what Claimant can still do despite her limitations.  20 C.F.R. §§ 404.1545, 416.945.  Residual Functional Capacity is an assessment based upon all of the relevant evidence.  Id.  It may include descriptions of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of Claimant's medical condition.  Id.  Observations by treating physicians, psychologists, family, neighbors, friends, or other persons, of Claimant's limitations may be used. Id.  These descriptions and observations must be considered along with medical records to assist the SSA to decide to what extent an impairment keeps a Claimant from performing particular work activities.  Id.  This assessment is not a decision on whether a Claimant is disabled, but is used as the basis for determining the particular types of work a Clamant may be able to do despite their impairments.  Id.

12.     Social Security - Claimant's Credibility - Pain Analysis.  The determination of whether a person is disabled by pain or other symptoms is a two step process.  First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an

impairment capable of causing the degree and type of pain alleged.  Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record.  Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

C.    Discussion

1. Credibility Analysis

Claimant asserts that the ALJ erred by failing to perform a proper credibility analysis. Commissioner counters that the ALJ performed a proper credibility analysis.

The determination of whether a person is disabled by pain or other symptoms is a two step process. First, the ALJ must expressly consider whether the claimant has demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain alleged. Second, once this threshold determination has been made, the ALJ must consider the credibility of her subjective allegations of pain in light of the entire record. Craig v. Charter, 76 F.3d 585 (4th Cir. 1996).

In this case the ALJ correctly applied the Craig test. The ALJ found that the "claimant has a medically determinable impairment that could reasonably be expected to cause some of the symptoms described."  (Tr. 23).  This satisfies the first prong of Craig. With regard to the Claimant's credibility, the ALJ "d[id] not find the claimant to be entirely credible and d[id] not accept his statements concerning his symptoms and limitations, including, but not limited to, back pain and shortness of breath on any exertion, constant back pain, numbness of the legs, inability to relate to others, and inability to maintain concentration and attention.  (Tr. 23).  The ALJ noted that "On August 2, 2000, he (Claimant) stated that he could not even watch television or listen to a radio because of inability to concentrate (Exhibit B-8F). However, less than two months earlier

he testified to the Administrative Law Judge that he was able to watch half hour television programs and read a book. On August 2, 2000, the claimant also stated that he had not used marijuana in five years (Exhibit B-8F). However, on July 9, 2002, he flatly denied any history of substance abuse, clearly a misrepresentation (Exhibit B-19F). On July 9, 2002, the claimant reported a history of nightmares related to his gunshot injury but denied any at the present time (Exhibit B-19F). This statement is inconsistent with his statement made on January 23, 2001, that he had nightmares but did not remember their content. (Exhibit B-8F). In spite of his alleged anxiety and inability to concentrate, the claimant is able to drive a vehicle (Exhibits B-10F and B-19F), and there is no evidence that he has been involved in a motor vehicle accident. In spite of his supposed fear of going out and being around people, he reported going to a motorcycle rally (Exhibit B-17F) and going to have a new tattoo put on his right shoulder (Exhibit B-19F)." (Tr. 22). In addition, "[i]n spite of the alleged extreme psychological trauma that he experienced as a result of being shot in April 1995, as noted by the Appeals Council, the claimant had only three months of mental health treatment. He had no further mental health treatment prior to his incarceration in 1997, a period of two years or more. The claimant testified that he would have stayed in mental health treatment had he not gone to jail, but this testimony is patently untrue on the basis of the two-year hiatus just discussed." (Tr. 22). Lastly there are inconsistencies in claimant's insistence that he was unable to work while in prison. (Tr. 23). Claimant "failed to submit any prison records corroborating his allegation that his injuries precluded him from working while in prison. "( Tr. 23). In fact, the prison records submitted by claimant, "contain a notation made on July 6, 2000, that the "inmate may work." (Tr. 23). The ALJ considered claimant's subjective complaints of pain as well as his credibility in light of the entire record and

satisfied the second prong of <u>Craig.</u>  The ALJ properly assessed Claimant's credibility in accordance with <u>Craig</u>.

## 2. Opinion of Treating Physicians

Claimant alleges that the ALJ failed to properly weigh and evaluate the opinions of Claimant's treating physicians.  Commissioner counters that the ALJ properly weighed and evaluated the medical opinions of record.

The opinion of a treating physician will be giving controlling weight if the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. § 416.927(d)(2). While the credibility of the opinions of the treating physician is entitled to great weight, it will be disregarded if there is persuasive contradictory evidence. <u>Evans v. Heckler,</u> 734 F. 2d 1012 (4th Cir. 1984).

In the present case, the Claimant's argument that the ALJ erred in failing to properly weigh and evaluate the opinions of Dr. Morgan and Dr. Beard is without merit.  Dr. Morgan's opinion is not supported by any medically acceptable clinical or laboratory evidence. The opinion of Dr. Morgan as to Claimant's marked deficiencies were found by the Administrative Law Judge to be based on the "claimant's subjective statements or his behavior during the evaluation." (Tr. 28). Further, the Administrative Law Judge found that "the evidence of record, considered from a longitudinal basis, fails to support the marked limitations related to the claimant's depression and irritability reported by the evaluators (Exhibit B-19F)." (Tr. 28).

However, even though the ALJ did not give controlling weight to the opinion of Dr. Morgan, the limitations noted by Dr. Morgan are reflected in Claimant's RFC limitations.

Because of Claimant's restrictions in his ability to interact with people, the ALJ limited Claimant's RFC to a low stress environment with no more than occasional interaction with others. ( Tr. 29-30.)

Also, Dr. Morgan's opinion is inconsistent with other evidence of record. "The evidence of record supports a finding that the claimant's mental impairments, considered in combination, result in a mild restriction of activities of daily living." (Tr. 28). Administrative Law Judge found that Claimant "has moderate difficulties in maintaining concentration, persistence, and pace. Dr. Dickerson reported no deficits in this area at the time of the psychiatric evaluation on June 23, 1995. Dr. Chandran reported on September 25, 2000, that the claimant displayed poor concentration and attention with various tasks. Dr. France reported no mental status examination findings detailing problems in this area. Dr. Joseph reported that the claimant's concentration appeared moderately impaired . However, reporting on the evaluation performed on July 9, 2002, the evaluators opined that the claimant's concentration was within normal limits. They opined that the claimant's persistence was poor and pace was within normal limits." (Tr. 29). Similarly, the assessment of the state agency psychological consultant was given greater weight because it was "generally consistent with the longitudinal record to the claimant's mental impairments." (Tr. 29). The consultant found that "claimant was found to retain the mental-emotional capacity to perform routine tasks in a low-longitudinal record related to the claimant's mental impairments." (Tr. 29).

The ALJ took the assessment of Dr. Beard into consideration when making the RFC determination. On May 30, 2002, "Dr. Beard submitted an assessment finding the claimant capable of performing a range of light work." (Tr. 25). Taking this assessment along with the

assessment of the state agency consultant into consideration, the ALJ made the following RFC determination. "He (Claimant) is able to perform light work with a sit/stand option; can perform all postural movements occasionally, except he should not climb ladders, ropes or scaffolds; should have no repetitive neck movements or reaching either overhead or in front; should not be exposed to environmental pollutants or temperature extremes; should work in a low stress environment; is limited to routine, repetitive work; and should have no more than occasional interaction with others." ( Tr. 29-30).

Therefore, Claimant's argument that ALJ erred in assessing the weight of treating physician and psychiatrist opinions is without merit. The ALJ's decision whether to give these opinions controlling weight was proper.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically the ALJ properly evaluated Claimant's credibility in accordance with Craig v. Charter, 76 F.3d 585 (4th Cir. 1996). Also, the ALJ gave proper weight to the opinions of Claimant's treating physicians, Dr. Morgan and Dr. Beard.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.   A copy of such objections should be submitted to the District Court Judge of Record.  Failure to timely file objections to the Report

and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 20, 2005

/s/ James E. Seibert

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE