FILED
SEP 19 2007
U.S. DISTRICT COURT
ELKINS WV 26241

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

EDWARD LOWER,

    Plaintiff,

v.                                  Civil Action No.: 2:04-CV-57 (MAXWELL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

The Plaintiff, Edward Lower, instituted the above-styled action in this Court on August 13, 2004, seeking judicial review of an adverse decision by the Defendant, the Commissioner of the Social Security Administration, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. §1383 (c)(3).

The Answer Of The Federal Defendant was filed on October 22, 2004. By Order entered on October 28, 2004, the Court established a December 27, 2004 deadline for filing of cross motions for summary judgment. On November 24, 2007, Plaintiff filed a Motion to Remand, pursuant to multiple administrative documents noted as missing from Defendant's Answer. On December 7, 2004, this Court Ordered the Defendant to file the noted missing administrative document within thirty days. Thereafter, by Order entered December 20, 2004, the Court established a January 19, 2005 deadline for the filing of Plaintiff's Motion for Summary Judgment, directing that the Defendant's Motion for Summary Judgment be filed within thirty days after the filing of Plaintiff's Motion.

On December 27, 2004, the Defendant filed a Motion for Summary Judgment with Brief in Support of said Motion. The Plaintiff's Motion For Summary Judgment and Brief In Support

thereof were filed on January 19, 2005. By Order entered January 28, 2005, United States Magistrate Judge James E. Seibert ordered the Defendant to file a Supplemental Memorandum responding to the specific contentions in Plaintiff's Motion for Summary Judgment on or before March 31, 2005. The Court Ordered on January 31, 2005, that all Motions be referred to United States Magistrate Judge James E. Seibert pursuant to 28 U.S.C. § 636(b)(1)(B); Rule 72 of the Federal Rules of Civil Procedure; and Rule 7.02(c) of the Local Rules of Civil Procedure, with directions to consider the same and to submit to the Court proposed findings of fact and a recommendation for disposition. On March 14, 2005, the Defendant's Supplemental Memorandum Responding to Plaintiff's Motion for Summary Judgment was filed and, on March 28, 2005, the Plaintiff's Reply To Defendant's Supplemental Memorandum Responding to Plaintiff's Motion For Summary Judgment was filed.

On June 20, 2005, Magistrate Judge Seibert filed his Report And Recommendation, wherein he recommended that the Plaintiff's Motion For Summary Judgment be denied and the Defendant's Motion For Summary Judgment be granted. Specifically, Magistrate Judge Seibert found that the Administrative Law Judge correctly applied the proper credibility analysis, and that the Administrative Law Judge properly evaluated and weighed the opinions of the treating physician and psychiatrist.

Magistrate Judge Seibert's Report And Recommendation expressly directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court within ten (10) days after being served with a copy of said Report And Recommendation. Said Report And Recommendation further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

On June 30, 2005, the Plaintiff's Objections To The Report And Recommendation Of The Magistrate Judge was filed with the Court. In his Objection, the Plaintiff objected to the Magistrate Judge's findings that the Administrative Law Judge properly performed the required credibility analysis and the finding that the Administrative Law Judge properly weighed and evaluated the substantial medical evidence provided by the treating and examining source.

By Order of September 30, 2005, this Court Ordered that the case be Remanded to Magistrate Judge Seibert for consideration of the issues raised by the Plaintiff in his Objection.

On February 10, 2006, Magistrate Judge Seibert filed his Per Remand Memorandum Opinion and Report and Recommendation, finding that the Administrative Law Judge had properly evaluated Plaintiff's credibility under the <u>Craig</u> standard. Magistrate Seibert also found that, despite conflicting medical evidence, the Administrative Law Judge had acted within his province to determine the appropriate weight to be attributed to the evidence in order to resolve the conflict.

Magistrate Judge Seibert's Per Remand Memorandum Opinion and Report And Recommendation expressly directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court by February 27, 2006. Said Per Remand Memorandum Opinion and Report And Recommendation further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

On February 27, 2006, Plaintiff's Second Objection to the Magistrate's Proposed Findings of Fact and Recommendation for Disposition was filed. Plaintiff specifically objected to the Magistrate's finding that the Administrative Law Judge properly considered Plaintiff's

credibility and the finding that the Administrative Law Judge properly considered and weight the treating and examining source evidence.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which an objection is made. After reviewing Magistrate Judge Seibert's Report And Recommendation; the Plaintiff's Objections To The Report And Recommendation Of The Magistrate Judge; and the entire record in this matter, this Court believes that, for the following reasons, it is appropriate to reject the Magistrate Judge's Report And Recommendation and to remand this matter back to the Commissioner solely for the calculation of benefits.

## I. The Administrative Law Judge erred by failing to conduct a proper credibility analysis, as required by SSR 96-7p and Circuit precedent.

In his prior filings, the Plaintiff argued that the foundation of the Administrative Law Judge's denial rests upon a faulty credibility analysis. The Commissioner argues that the ALJ properly considered Plaintiff's credibility.

In Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), the Fourth Circuit discussed the procedure for evaluating the credibility of a claimant:

> Under these regulations, the determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and *which could reasonably be expected to produce the pain or other symptoms alleged.*
> …
>
> It is only *after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1).
>
> Id. at 594-595 (citations omitted)(emphasis in original).

An ALJ may not selectively cite only that evidence which supports an adverse credibility finding while ignoring other evidence supportive of the claimant's credibility. Hines v. Barnhart, 453 F.3d 559, 565-566 (4th Cir. 2006). "The deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence." Id. (*citing* Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995) (*holding* "An ALJ may not select and discuss only that evidence that favors his ultimate conclusion....")).

In the case at hand, it is abundantly clear that the ALJ largely based the unfavorable decision on his determination that Plaintiff was not credible. The ALJ's adverse credibility finding relies heavily on the ALJ's belief that Plaintiff was magnifying and exaggerating his symptoms. The Court will first address this issue.

The ALJ wrote, "... the Administrative Law Judge finds that the claimant's complaints of severe pain are obvious symptom magnification." (Tr. 25). "The claimant's complaints of shortness of breath are also magnified." (Tr. 25). "...[T]he Administrative Law Judge believes that the claimant is largely feigning numerous symptoms." (Tr. 26). "... [T]he Administrative Law Judge believes this is an instance of symptom magnification." (Tr. 22).

Plaintiff argues that these statements are not supported by any medical evidence in the record. The Commissioner and the Magistrate have never addressed this specific portion of Plaintiff's argument. (Doc. 12, 18, 20, 24). After a review of the record, the briefs by the parties and the two Reports and Recommendations from the Magistrate, the Court agrees with Plaintiff.

As Plaintiff has argued, there is simply no medical evidence in this record supporting the ALJ's contention that Plaintiff was magnifying or feigning his symptoms. The Court finds noteworthy that the Commissioner did not address this issue in his briefs and has not cited any evidence to support the ALJ's position on this issue. (Doc. 12, 18). Morgan D. Morgan, M.A.

conducted a psychological evaluation at the request of the Commissioner on July 9, 2002. (Tr. 410-416). Mr. Morgan did not make any mention of possible symptom magnification or offer any such diagnosis. Kip Beard, M.D. conducted a physical examination at the request of the Commissioner on June 3, 2002. (Tr. 201-206). Dr. Beard, likewise, gave no indication that Plaintiff was magnifying or feigning his symptoms. No mention of symptom magnification can be found in Plaintiff's treatment records. The ALJ indicated that he found the state agency reviewing psychological consultants' opinions "... generally consistent with the longitudinal record related to the claimant's impairments." (Tr. 29). Yet neither of these reviewing psychologists made any mention of symptom magnification or feigning symptoms. (Tr. 183-184, 592-594). Thus, this record clearly does not support the ALJ's finding that Plaintiff was magnifying and feigning his symptoms.

The ALJ next indicated that Plaintiff was not credible due to a list of reasons allegedly derived from the record and Plaintiff's testimony. The Court will now address these reasons individually. In his two Reports and Recommendations the Magistrate reiterated the ALJ's stated reasoning for his adverse credibility finding and accepted said reasoning. (Doc. 20, 24). It is not clear to this Court, however, that the Magistrate adequately reviewed the record to determine if the ALJ's stated reasoning was supported by the substantial evidence of record. For the reasons set forth below, the Court cannot accept the Magistrate's finding that the ALJ's adverse credibility finding was supported by substantial evidence.

The ALJ wrote, "... the claimant has little or no credibility for the same reasons set forth in the prior decision and for other reasons as well." (Tr. 22). The Court is well aware that the prior unfavorable decision mentioned here was issued by this same ALJ and was, furthermore, reversed and remanded by the Appeals Council because it was not supported by substantial

evidence. (Tr. 681-701, 702- 704). It seems highly questionable to rely on reasoning contained in a decision that has previously been reversed by an appellate body.

The ALJ next wrote,

> In his disability report the claimant stated that a doctor told him not to do anything and particularly not to drive. However, in his daily activities questionnaire filed on July 3, 1995, the claimant reported vacuuming, washing the car, taking out the trash, and driving. (Tr. 22).

In the Disability Report, Plaintiff first identified Dr. Mark Reynolds as being a physician he saw for initial treatment of gun shot wounds. Plaintiff noted, "Dr. Reynolds told me not to do anything. Could easily develop an infection. Injury is close to heart, get sharp stabbing pains in chest. No lifting straining, with possibility to reopen wounds." (Tr. 461, 463). Plaintiff was clearly reporting upon limitations/instructions given to him post-surgery. Records from West Virginia University Hospitals show that Dr. Reynolds did participate surgically in Plaintiff's care following a gunshot wound to the chest. (Tr. 504-506).

Contrary to the ALJ's assertions, on the adult activities questionnaire Plaintiff indicated that he *did not* complete the activities listed by the ALJ. (Tr. 475). Plaintiff indicated that he did not travel to many places alone and that his daughter accompanied him. (Tr. 476). Plaintiff also noted that he rode to the store with his spouse. (Tr. 477).

The ALJ also found significant that "[i]n a pain questionnaire dated July 3, 1995, the claimant reported intermittent pain, but in a later pain questionnaire dated January 29, 1996, he complained of constant pain." (Tr. 22). These forms, however, were completed six months apart. Medical conditions do change. Under such reasoning, a claimant could never report a change in his symptoms without fear of being found not credible. If the Commissioner never expected a claimant's condition to change then there would be no point in requesting a claimant to complete a second form at a later date.

7

The ALJ wrote, "[l]ess than one month after being discharged from the hospital, on May 8, 1995, in spite of allegedly being told not to do anything, the claimant reported that he enjoyed riding motorcycles and fishing. (Tr. 22). When specifically asked how often he did such activities on the adult activities questionnaire, Plaintiff stated "very little riding, no hunting or fishing or gardening now." (Tr. 476). The ALJ ignored this evidence.

The ALJ next found significant the claimant's purported ability to either watch no television or up to one half hour of television. (Tr. 22). The hearing transcript indicates that when asked if he did any reading, Plaintiff actually testified that "I did. I haven't for the last six months." (Tr. 673). When asked about watching television, he stated that he "... can't sit and watch a program..." and that "I just can't get into..." a half-hour television segment or movie. (Tr. 673). "He states that he does not like to watch TV." (Tr. 181).

The ALJ again misrepresented Plaintiff's statements regarding substance abuse/use. (Tr. 22). After noting that Plaintiff had denied marijuana use in the preceding five years, the ALJ noted that Plaintiff "flatly denied any history of substance abuse, clearly a misrepresentation." (Tr. 22). These two statements are not at all inconsistent and not a misrepresentation. A person can *use* a substance, such as alcohol, without *abusing* that substance. Here, Plaintiff acknowledged past use but consistently denied abuse. Mr. Morgan noted that records "indicate that the client may have some history of alcohol or marijuana usage." (Tr. 412). There is no apparent misrepresentation here.

The ALJ wrote, "[o]n July 9, 2002, the claimant reported a history of nightmares related to his gunshot injury but denied any at the present time. This statement is inconsistent with his statement made on January 23, 2001, that he had nightmares but did not remember their content." (Tr. 22). The ALJ has again created an inconsistency where none existed. These two

8

statements referenced by the ALJ are over one and one-half years apart. It is certainly possible that Plaintiff's symptoms changed during that time period. Again, under this line of reasoning a claimant could never report any change in his condition to his treating physicians for fear of later being found not credible in his disability claim. Psychologist Morgan noted that Plaintiff "... indicated that he has a history of nightmares related to his gunshot injury, but denied any at the present time. He reported that these nightmares have been greatly reduced due to his medication." (Tr. 411). The Court cannot see how a claimant's statement regarding possible improvement of a symptom in response to medication indicates that the claimant is not credible.

The ALJ next stated that "[i]n spite of his alleged anxiety and inability to concentrate, the claimant is able to drive a vehicle, and there is no evidence that he has been involved in any motor vehicle accident." (Tr. 22). First, Plaintiff's actual statements regarding his ability to drive have been discussed above. Second, there is no evidence in this record from a medical source indicating the relationship, if any, between Plaintiff's symptoms and having or not having a motor vehicle accident. Objective signs of anxiety were observed by Plaintiff's treating psychiatrist, Dilip Chandran MD, when he noted on November 1, 2000 that Plaintiff "remained markedly anxious and fairly tremulous." (Tr. 154). Mr. Morgan also diagnosed Anxiety Disorder NOS. (Tr. 415).

The ALJ selectively cited to only a small portion of the record in regard to Plaintiff's ability be out and around people. "In spite of his supposed fear of going out and being around people, he reported going to a motorcycle rally and going to have a new tattoo put on his right shoulder." (Tr. 22). On August 4, 2000, Mr. Lower was actually diagnosed with "Antisocial personality traits," which would seem to corroborate his dislike for being around people. (Tr. 110). Plaintiff reported to Appalachian Community Health on September 25, 2000 that "he has

had difficulties with social situations as he has ongoing anxiety, shakiness, anhednoia, and poor concentration." (Tr. 156). Sharon Joseph, Ph.D. noted that Plaintiff "... reports that he rarely leaves his house or the yard. He states that sometimes his daughter does get him to go places." (Tr. 181). A special entry in St. Joseph's Hospital records indicated that Plaintiff was observed to "[i]solates self. Does not participate in unit activities when offered. Refuses to play cards. Not interested in going outdoors. Flat Affect." (Tr. 362). Other notes indicate "scared being around people, isolative...." (Tr. 363). On July 23, 2001, Plaintiff noted that he "continues to be depressed and have lots of anxiety problems especially if he goes out in public." (Tr. 405). Mr. Lower also reported that he "was able to go to the motorcycle rally over the weekend and able to enjoy that but that is the first thing he has enjoyed in a long time." Id. Thus, the ALJ cited to only a small portion of the record while failing to acknowledge the great weight of the evidence relevant to Plaintiff's social functioning.

The ALJ then stated his belief that Plaintiff's reported hallucination of spiders on his pillow was "... an instance of symptom magnification." (Tr. 22). The ALJ went on to state that Dr. France, the treating psychiatrist, "... also discounted this symptom, as she diagnosed major depression without psychotic features." Id. The ALJ's statements are not supported by any evidence in this record and, furthermore, not accurate. Dr. France gave absolutely no indication that Plaintiff's report was symptom magnification. To the contrary, she specifically stated that Plaintiff's report "... seems to be hypnopompic hallucinations...." (Tr. 402). There is no indication in the record that Dr. France "discounted" this complaint and no such inference can be made from her diagnosis. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply does not possess the competency to substitute his views on

the severity of plaintiff's psychiatric problems for that of a trained professional." Grimmett v. Heckler, 607 F.Supp. 502, 503 (S.D.W.Va., 1985).

"The Administrative Law Judge observed that the claimant did not appear at all anxious either at the hearing in prison or at the subsequent hearing." (Tr. 22). As just cited above, the ALJ was not qualified to determine, contrary to the express diagnoses by the psychological and psychiatric experts, that Plaintiff was not anxious based on Plaintiff's appearance at the hearing. Furthermore, this line of reasoning is clearly disfavored.

> This kind of determination is inappropriate for an ALJ, and is generally condemned. The ALJ is not a physician qualified to make such determinations. In addition to the obvious danger of unreliability, such an approach "may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel."
>
> Jenkins v. Bowen, 819 F.2d 1138, 1987 WL 37535 (4th Cir. 1987) (citing Freeman v. Schweiker, 681 F.2d 727, 731 (2d Cir.1982) and Tyler v. Weinberger, 409 F.Supp. 776, 789 (E.D.Va.1976)).

The ALJ next wrote, "... the claimant wants the Administrative Law Judge to believe, in spite of the longitudinal history just discussed, that he suddenly got extremely distressed about an event that occurred in 1995, for which he received only three months of treatment and then discontinued taking his prescribed medication." (Tr. 22). The ALJ, however, did not consider that Plaintiff was paroled from prison on July 11, 2000, but required inpatient psychiatric treatment at St. Joseph's Hospital less than one month later on August 3, 2000. (Tr. 215, 363). Plaintiff immediately restarted treatment with Appalachian Community Health Services upon release from the hospital. (Tr. 160). The ALJ again selectively cited to only portions of the prison medical records while ignoring portions that did not support his ultimate conclusion. The Court is well aware that inmates are not able to obtain medical treatment at their sole discretion.

On December 3, 1998, Plaintiff did report his history of mental health treatment to an unknown source at the prison. (Tr. 223). Plaintiff was noted to require a routine mental health referral. Id. Plaintiff consistently reported his past mental health treatment on April 12, 2000, and again on June 14, 2000. (Tr. 221, 217). On May 6, 1999, Plaintiff requested to be alone in his cell due to medical reasons. (Tr. 236).

Finally, the ALJ wrote, "[a]nother falsification revealed by the prison records relates to the claimant's insistence that he was declared unable to work and therefore did not have to do any work while in prison." (Tr. 23). Yet, in the same paragraph, the ALJ wrote, "[t]he Administrative Law Judge believes that, if the claimant did not work in prison, it was because of this infection...." (Tr. 23). In one sentence the ALJ insists that Plaintiff's assertion that he could not work was a "falsification" but then the ALJ admits that Plaintiff may well have been prevented from working due to a medical condition. Clearly, such reasoning cannot support a finding that Plaintiff falsified his testimony.

The Court is aware that the during the hearing the vocational expert (hereinafter VE) was specifically asked a hypothetical question wherein he was to assume that Plaintiff's testimony was found to be credible. (Tr. 655). The VE testified that such a person "... could not function independently in a work setting" and that "... this all would translate into the workplace as a person who could not function." (Tr. 655). As in the <u>Hines</u> decision, the ALJ here erroneously found that Plaintiff was not credible. The VE testimony, the evidence of record and the credible and consistent testimony of Plaintiff, indicate that Plaintiff has shown that he is disabled and shown that there are no other jobs that he can perform in the national economy.

Therefore, the Court cannot find that substantial evidence supports the ALJ's adverse credibility finding and cannot agree that such a finding was based on a correct application of the

law. There is no evidence in this record to support the ALJ's conclusion that Plaintiff was magnifying or feigning symptoms. Furthermore, the ALJ misstated the contents of parts of the record that he relied on and erred by selectively citing to only portions of the record while ignoring records more fully supporting Plaintiff's credibility.

II. **The ALJ erred by failing to properly weigh and evaluate the medical evidence provided by the treating and examining sources.**

Plaintiff argues that the ALJ improperly considered the opinions of the medical sources contained in the record. The Commissioner argues that the ALJ properly weighed the medical opinions.

> The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Courts typically "accord 'greater weight to the testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."

Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006) (*citations omitted*).

Plaintiff first contends that the ALJ used a faulty line of reasoning by using the adverse credibility finding as a basis for rejecting the opinions of the medical sources. The ALJ wrote,

> For all the foregoing reasons, the Administrative Law Judge does not find the claimant to be entirely credible and does not accept his statements concerning his symptoms and limitations .... In view of this finding concerning the claimant's credibility, the Administrative Law Judge does not accept medical findings or opinions that are based solely or primarily on the claimant's subjective complaints. (Tr. 23).

Because the above cited Hines analysis does not permit the ALJ to reject a medical source's opinion based on a finding that the claimant is not credible, the Court must agree with Plaintiff. The Hines five factor test is not a new analysis but a reaffirmation of the longstanding analysis contained in past case law and regulations. Hines at 563 (*citing* Johnson v. Barnhart, 434 F.3d

650, 654 (4th Cir. 2005), 20 C.F.R. § 404.1520). Medical opinions can only be rejected if the opinion is not supported by the record and/or if the opinion is not consistent with the record.

The ALJ is simply not permitted to dismiss medical opinions on the basis that he finds Plaintiff to be less than credible. In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the ALJ rejected a doctor's opinion based on the ALJ's "own speculative conclusion that the report was based only on the claimant's subjective complaints...." However, the Tenth Circuit stated that, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinions.*" Id. (Emphasis in original, *quoting* from McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002)). Thus, the Court concludes that it was improper for the ALJ to reject medical opinions on the basis of the adverse credibility finding.

Plaintiff specifically argues that the ALJ erroneously rejected the opinion of the Commissioner's consultative psychologist, Morgan D. Morgan, M.A. (Doc. 14 at 11). The Court notes that this same ALJ previously denied Plaintiff's claim on August 24, 2000. (Tr. 681). Subsequent to that unfavorable decision, the Appeals Council reversed the decision and remanded the claim for a new hearing because the decision was not supported by substantial evidence. (Tr. 703). As part of that Remand Order, the Appeals Council ordered the ALJ to obtain a psychological evaluation with psychological testing and a statement about what the claimant can still do despite the impairments. (Tr. 704). Although the Commissioner failed to provide Mr. Morgan with any of Plaintiff's medical records, Plaintiff's attorney provided Mr. Morgan with a comprehensive copy of Plaintiff's relevant mental health records.

On July 9, 2002, at the request of the Commissioner, Mr. Morgan did conduct a psychological evaluation with psychological testing as ordered by the Appeals Council. (Tr. 410-416). Mr. Morgan also completed the Commissioner's Medical Source Statement. (Tr. 417-418). Mr. Morgan opined Mr. Lower would have a "Marked" restriction in his abilities to interact appropriately with the public; to interact appropriately with supervisor(s); to interact appropriately with co-workers; to respond appropriately to work pressures in a usual work setting; and to respond appropriately to changes in a routine work setting – all of which would impact upon Plaintiff's ability do other work. The ALJ had not obtained Mr. Morgan's report at the time of the hearing and did not obtain it until after the hearing. (Tr. 630-631).

In response to Mr. Morgan's evaluation, the ALJ wrote,

> ... the Administrative Law Judge finds that the sole basis for these assessments was the claimant's subjective statements or his behavior during the evaluation. The Administrative Law Judge finds that the evidence of record considered from a longitudinal basis, fails to support the marked limitations related to the claimant's depression and irritability reported by the evaluators. (Tr. 28).

After reviewing Mr. Morgan's evaluation report, the Court cannot agree with the ALJ's statements as they appear inconsistent with the plain language of Mr. Morgan's report. Mr. Morgan's evaluation was based on psychological testing, a mental status evaluation, a clinical interview and a review of an extensive list of Plaintiff's medical records. (Tr. 410-414). Furthermore, the Court takes notice that the ALJ did not provide any discussion regarding the evidence the ALJ believed failed to support Mr. Morgan's opinion. No such evidence is apparent in this record. Even if the ALJ's reasoning was correct, it was the Commissioner who ordered this evaluation, arranged for it and chose Mr. Morgan to conduct it. It seems disingenuous to later complain about how the evaluation was conducted after the results return favorable for the claimant.

The Magistrate accepted the ALJ's reasoning for rejecting Mr. Morgan's opinion. (Doc. 24 at 6). However, for the reasons stated above, it is not clear to the Court that the Magistrate adequately reviewed the record to determine if the ALJ's reasoning was actually supported by substantial evidence of record. The Magistrate stated that "... the Court will not re-weigh or reappraise that evidence." Id. The Court agrees that it will not reweigh the evidence but as recently as the Hines decision, the Fourth Circuit has restated "[t]he deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence." Hines 453 F.3d at 566 (*citing* Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995).

Plaintiff next argues that the ALJ failed to properly consider the opinions and reports of Kip Beard, M.D. and Sharon Joseph, Ph.D. (Doc. 14 at 12). Specifically, Plaintiff argues that neither of these evaluators supported the ALJ's position that Plaintiff was magnifying or feigning symptoms. The Court notes that both of these sources were examining sources who conducted consultative evaluations at the request of the Commissioner. (Tr. 201-214, 179-182). The Court has previously found that the ALJ's finding regarding magnifying or feigning symptoms was erroneous. In its analysis of the credibility issue above, the Court considered both of these reports when finding that the ALJ's adverse credibility finding was unsupported by fact or law. The Court's previous finding above, therefore, renders Plaintiff's argument here moot.

Plaintiff next argues that the ALJ improperly gave great weight to the state agency reviewing psychologists. In his decision, the ALJ found that the state agency psychologists' assessments dated February 8, 1996 and July 31, 2001 "... are generally consistent with the longitudinal record related to the claimant's mental impairments." (Tr. 23). The ALJ then wrote, "[c]onsistent with the assessment of Dr. Beard and the assessments of the state agency

psychological consultants, the Administrative Law Judge finds that the claimant retains the following residual functional capacity ...." (Tr. 23). Thus, Plaintiff is correct in arguing that the ALJ gave great weight to the state agency psychologists' assessments. The Commissioner counters Plaintiff's argument by stating that the state agency consultants are "...'highly qualified' medical sources who were also 'experts' in Social Security disability evaluation." (Doc. 18 at 13).

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.
>
> Social Security Ruling SSR 96-6p.

The Magistrate did not address Plaintiff's specific argument on this issue. (Doc. 24 at 6). Likewise, the Commissioner failed to correctly recognize Plaintiff's argument. Plaintiff did not argue that the state agency psychologists were not qualified to provide the opinions they provided. Rather, Plaintiff argued that it was improper for the ALJ to give these opinions great weight given the clear language of SSR 96-6p. The Court must agree with Plaintiff.

It is indisputable that neither of the state agency psychologists mentioned by the ALJ could have reviewed all of the evidence. One of the assessments was completed on February 8, 1996, almost seven years prior to the ALJ's decision. (Tr. 15, 592-594). The other assessment was completed on July 31, 2001, about one and one-half years prior to the hearing. (Tr. 183-186). For example, neither of these psychologists could possibly have considered Mr. Morgan's

report, which was completed on July 9, 2002. (Tr. 410). This report was ordered by the Appeals Council as evidence specifically needed in this claim. (Tr. 703-704).

Additionally, the Court notes that on February 8, 1996, Joseph Kuzniar, Ed.D., one of the state agency psychologists relied on by the ALJ, also completed a Psychiatric Review Technique form. (Tr. 583). On that form Dr. Kuzniar found that Mr. Lower "often" had "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in work settings or elsewhere)" under the "FUNCTIONAL LIMITATION" section of this form. (Tr. 590). When this limitation was presented to the VE present at the hearing, the VE testified that this limitation would preclude competitive employment and that "[e]mployers expect you to work within a schedule and maintain a pace and be productive 85 percent of the workday." (Tr. 654-655). Despite finding that Dr. Kuzniar's opinion was entitled to great weight, the residual functional capacity finding in the decision does not reflect this limitation. (Tr. 32). In response to this question and answer, the ALJ wrote, "[t]he undersigned does not accept these response *(sic.)* to be accurate because the hypothetical factors upon which they are based are considered to be a material exaggeration of the substantial evidence of record." (Tr. 31). This statement is not accurate as the "hypothetical factors" posed to the VE came directly from the opinion of the state agency psychologist, which the ALJ gave great weight.

Therefore, the Court cannot find that substantial evidence supports the ALJ's rejection of Mr. Morgan's opinion and further finds that his analysis of the medical opinions of record was not based on a correct application of the law. Mr. Morgan's report was conducted pursuant to and required by the Appeals Council's order. The ALJ misstated the basis of Mr. Morgan's opinion and failed to show that his opinion was inconsistent with the other evidence of record. The Court recognizes that Mr. Morgan's opinion regarding Plaintiff's functional limitations was

quite consistent with Plaintiff's allegations and very supportive of Plaintiff's disability claim. Furthermore, as discussed in the previous section and in this section, none of the medical opinions provided any support for the ALJ's finding that Plaintiff was magnifying or feigning symptoms. Given the VE testimony in conjunction with the evidence of record from the state agency psychologist, Plaintiff has again shown that he is disabled and shown that there are no other jobs that he can perform in the national economy.

### III. Conclusion

The Court is well aware that Plaintiff filed his concurrent applications for benefits on June 23, 1995 and on May 5, 1995. (Tr. 18). Plaintiff waited over five years to receive the first erroneous unfavorable ALJ decision issued on August 24, 2000. (Tr. 18). The first unfavorable decision was subsequently overturned by the Appeals Council because it was not supported by substantial evidence and remanded to the very same ALJ. (Tr. 702-704). After a subsequent hearing before the same ALJ, Plaintiff waited until January 23, 2003 to receive the unfavorable decision now before the Court. On June 28, 2004, the Appeals Council denied Plaintiff's request for review. (Tr. 9). Plaintiff then initiated this civil action on August 13, 2004. (Doc. 1). It is now over twelve years since Plaintiff filed his applications for benefits and he has still not received any final resolution to his claim. Given the Court's finding regarding Plaintiff's credibility and given the Court's finding regarding the medical opinions of record in combination with the vocational expert testimony, there are no further issues requiring a further administrative hearing. Plaintiff has shown that he is disabled as of his alleged onset date of disability, April 15, 1995. (Tr. 419).

For the above reasons, after making its required *de novo* review, pursuant to 28 U.S.C. § 636(b)(1)(C), this Court believes that it would not be appropriate to adopt the Report And

Recommendation filed by Magistrate Judge Seibert in this case. Rather, this Court believes that it is appropriate to **REMAND** the above-styled civil action to the Social Security Administration solely for calculation of benefits. As such, the Defendant's Motion For Summary Judgment is hereby **DENIED**, and the Plaintiff's Motion For Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

The Clerk of Court is directed to transmit copies of this Order to counsel of record herein.

ENTER: September 19th, 2007.

_____
United States District Judge